IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Jeffery Moore, | Case No. 8:11-cv-01173-DCN-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Sheriff Tony Davis and Major Lonnie Smith, | |
| Defendants. | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 37.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Sheriff Tony Davis ("Davis") and Major Lonnie Smith ("Smith"; collectively, "Defendants"). [Doc. 1.] Defendants filed their motion for summary judgment on December 22, 2011. [Doc. 37.] By Order filed December 27, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 38.] Plaintiff filed a response on January 5, 2012 [Doc. 40], and Defendants filed a reply on January 17, 2012 [Doc. 42]. Accordingly, the motion is now ripe for review.

## BACKGROUND

Plaintiff, an inmate at the Greenwood County Detention Center ("GCDC") alleges he was threatened by another inmate, L. Reed, who stated he was going to kill Plaintiff when Plaintiff came out of his cell. [Doc. 1 at 3.] An officer overheard the threat and reported it to a lieutenant. [*Id.*] The lieutenant placed Plaintiff and Reed on separation but did not remove Reed from the housing unit. [*Id.* at 4.] Plaintiff alleges that, because Reed was not removed from the unit, Plaintiff had to pass by Reed "on several occasions with no idea[] when L. Reed would try to do something" to Plaintiff. [*Id.*] As a result, Plaintiff alleges he feels his life is in danger and that the staff at GCDC has not acted responsibly, taken the threat seriously, nor taken the necessary steps to ensure Plaintiff's safety. [*Id.*] Plaintiff seeks $150,000 for mental and physical stress he has had to endure because of the threat. [*Id.* at 5.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do

so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

3

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477

4

U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

> information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

In their motion for summary judgment, Defendants argue summary judgment should be granted because Plaintiff's allegations do not rise to the level of a constitutional deprivation; Defendants cannot be held liable under the doctrine of respondeat superior; Defendants are not liable based on the theory of supervisory liability; Defendants are entitled to qualified immunity; to the extent Plaintiff has set forth allegations against GCDC, GCDC is not an entity for purposes of suit under § 1983; Plaintiff has failed to demonstrate any damages; and to the extent Plaintiff bases his claim on state law, Plaintiff has no claim under the South Carolina Tort Claims Act ("SCTCA"). [Doc. 37-1.] The Court agrees summary judgment should be granted.

**Liability Under the Doctrine of Respondeat Superior and Based On the Theory of Supervisory Liability**

Initially, the Court notes that neither of the Defendants named in the caption of Plaintiff's Complaint are even mentioned in the text of the Complaint. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of*

6

*New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted).[1]

Plaintiff has failed to allege facts sufficient to demonstrate any personal or supervisory wrongdoing by Defendants and, therefore, Defendants are entitled to summary judgment. In an abundance of caution, however, the Court will address Plaintiff's claim.

**Failure to Protect/Deliberate Indifference**[2]

---

[1] This is a heavy burden; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft*, 129 S. Ct. at 1957 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at * 2 (D.S.C. June 7, 2010). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

[2] It is unclear whether Plaintiff was a pretrial detainee or was serving a sentence of incarceration at the time the facts alleged in the Complaint occurred. However, the standard for denying an inmate humane conditions of confinement under the Eighth Amendment is the same as that which applies in cases arising under the Fourteenth Amendment, where prison officials are accused of deliberate indifference to a substantial risk of serious harm to prison inmates. *Young v. City of Mount Rainer*, 238 F.3d 567, 575 (4th Cir. 2001). Accordingly, Eighth Amendment cases concerning prisoner claims of deliberate indifference are relevant to

Construed liberally, Plaintiff alleges Defendants were deliberately indifferent because they failed to protect him from another inmate. The Eighth Amendment protects inmates from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). The United States Supreme Court and the Fourth Circuit have rejected a negligence standard in determining deliberate indifference. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner,* 927 F.2d 1312, 1315–17 (4th Cir. 1991). Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore*, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*). The Supreme Court has summarized deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

---

Fourteenth Amendment claims. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (stating pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment). This Report and Recommendation, therefore, speaks in terms of alleged violations of Plaintiff's Eighth Amendment rights.

Here, the facts alleged in support of Plaintiff's failure to protect claim simply do not rise to the level of a constitutional violation because Plaintiff fails to establish anyone at GCDC disregarded an excessive risk to Plaintiff's health or safety. Plaintiff's Complaint fails to allege any facts to demonstrate deliberate indifference. Once Plaintiff was threatened, GCDC officials acted immediately and reasonably in separating[3] Plaintiff and Reed. Additionally, Plaintiff does not allege any continued injury or physical impairment as a result of the threat.[4] Accordingly, summary judgment is appropriate on Plaintiff's deliberate indifference/failure to protect claim.[5]

---

[3] Smith's affidavit states Plaintiff and Reed were placed on separation on April 20, 2011; inmates at GCDC who are placed on separation do not have the opportunity for physical contact with one another and are not released from their cells at the same time for any reason. [Doc. 37-3 ¶¶ 2–5.] Further, once inmates are placed on separation, GCDC notes the separation in each inmate's record so that separation is maintained. [*Id.* ¶ 7.] Additionally, after placing Plaintiff and Reed on separation on April 20, 2011, the two inmates were only housed in the same unit until May 5, 2011. [*Id.* ¶ 8.]

[4] The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody *without a prior showing of physical injury*.

42 U.S.C. § 1997e(e) (emphasis added).

[5] To the extent Plaintiff complains that officials at GCDC failed to comply with GCDC's own policy to house inmates in separate housing units following threatening language [*see* Doc. 1 at 4], such a claim fails, as prison officials' failure to follow their own policies or procedures, standing alone, does not amount to a constitutional violation, *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (holding violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); *see also Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

Additionally, to the extent Plaintiff attempts to bring a claim against GCDC, GCDC is not a "person" within the meaning of § 1983. *See Monell*, 436 U.S. at 690 & n.55 (noting that for purposes of § 1983, a "person" includes individuals and "bodies politic and corporate"). GCDC consists of buildings, facilities, and grounds—inanimate objects that do not act under color of state law—and, thus, is not a "person" within the meaning of § 1983. *See Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."), *rev'd on other grounds* 2000 WL 20591, at *1 (4th Cir. 2000) (unpublished) ("The court also properly determined that the Piedmont Regional Jail is not a 'person' and is therefore not amenable to suit under § 1983."); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.").

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. The Court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.

**State Law Claims**

To the extent Plaintiff attempts to allege a state law claim in addition to his § 1983 claim, such a state law claim could be heard by this Court only through the exercise of

supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[6] Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction." To the extent Plaintiff bases his claim on state law, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

                                                     s/Jacquelyn D. Austin
                                                   United States Magistrate Judge

May 22, 2012
Greenville, South Carolina

---

[6] A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties. *See* 28 U.S.C. § 1332.

11